HARDIN et al. v. ST. LOUIS SOUTHWEST-
ERN RY. CO. OF TEXAS.†

(Court of Civil Appeals of Texas. Feb. 9, 1911.
Rehearing Denied Feb. 23, 1911.)

1. MASTER AND SERVANT (§ 289*)—DEATH OF
TRACKMAN — JURY QUESTION — DISCOVERED
PERIL.

Evidence in an action for death of a rail-
way trackman struck by a car *held* sufficient to
go to the jury on an issue of discovered peril.

[Ed. Note.—For other cases, see Master and
Servant, Dec. Dig. § 289.*]

2. TRIAL (§ 143*) — PROVINCE OF JURY —
WEIGHT OF EVIDENCE.

The weight to be given conflicting testimony
is for the jury.

[Ed. Note.—For other cases, see Trial, Dec.
Dig. § 143.*]

Error from District Court, Bowie County;
P. A. Turner, Judge.

Action by Mary Hardin and others against
the St. Louis Southwestern Railway Com-
pany of Texas. Judgment for defendant and
plaintiffs bring error. Reversed and re-
manded.

James D. Head and Smelser & Vaughan,
for plaintiffs in error. E. B. Perkins, D. Up-
thegrove, and Glass, Estes, King & Burford,
for defendant in error.

WILLSON, C. J. In November, 1908, Pat
Hardin, then in appellee's service as foreman
of a section gang, was run over by one of its
cars, in its yard in Texarkana, and killed.
Appellants, his widow and children, brought
this suit to recover of appellee damages suf-
fered by them on account of his death, which
they alleged was due to negligence on the
part of employés of appellee. The trial court
was of the opinion that it conclusively ap-
peared from the testimony that appellee was
not liable for the damages so sustained by
appellants, and he therefore instructed the
jury to return a verdict in appellee's favor.
The appeal is from a judgment rendered in
accordance with a verdict as instructed.

It appeared from the testimony that ap-
pellee had· in its yard two tracks running
east and west, parallel with each other and
about 12 feet apart from the center of one
of them to the center of the other; that the
men constituting the section gang were en-
gaged in work near to and on the south side
of the one farthest south of said two tracks,
designated as the "lead track"; that engine
No. 94 was slowly moved west from a point
on said lead track east of where the section-
men were at work, and that as it approached
the place where the men were at work Hard-
in crossed in front of it from the south to the
north side of said lead track; that after he
had reached the north side of said lead
track, as said engine was passing him, mov-
ing west, he playfully caught hold of the foot
of the fireman of said engine, who was then
on the gangway of the engine; that the fire-

man at once disengaged his foot from the
hold Hardin had on it, when Hardin, laugh-
ing and looking west, stepped backwards to-
wards the east to a point near the one farth-
est north of said two tracks, designated as
the "main line track," when he was knocked
down and run over by a coal car loaded with
sand, then being pushed west thereon by
engine No. 90. Two switchmen, whose duty
it was to keep a lookout for persons on or
near the main line track and warn them of
the approach of engine No. 90 and the car it
was pushing, were on said car. One of them,
Hosea, was sitting on the right-hand side of
the car, 10 or 12 feet from the front end of
same—that is, from the end farthest west;
and the other, Bruce, was sitting on the
left-hand side of the front end of the car. It
was shown that the point where the accident
occurred was within the .corporate limits of
the city of Texarkana, and that an ordinance
of that city prohibiting the operation within
its limits of a railroad engine or car at a
greater rate of speed than six miles an hour
was in force. The testimony was conflicting
as to the rate of speed engine No. 90 and
the coal car were moving at the time of the
accident. It was sufficient to support a find-
ing that same were moving as fast as 12
miles an hour or as slow as four miles an
hour.

In their petition appellants charged ap-
pellee with negligence because of various
acts and omissions specified, of which, they
alleged, its employés had been guilty; but it
cannot be said that there was testimony tend-
ing to support the allegations made. except
so far as they charged negligence in that en-
gine No. 90 and the coal car were being op-
erated at a rate of speed in violation of said
ordinance, and in so far as they charged neg-
ligence in that Hosea and Bruce, having dis-
covered Hardin to be in a perilous situation
from the movement of said coal car and en-
gine No. 90, in time, by means at their com-
mand, to have avoided injury to him, failed
to resort to such means for his protection.
We do not understand appellants to be in the
attitude of insisting that engine No. 90 and
the coal car at the time of the accident were
moving at a greater rate of speed than six
miles per hour. On the contrary, we under-
stand their insistence to be that same were
moving at a rate not exceeding four or five
miles an hour. Therefore the question, and
the only question, presented for determina-
tion is as to whether the testimony made
an issue as to "discovered peril" which should
have been submitted to the jury. The wit-
ness Coston was the fireman on engine No.
94. He testified that when he took his foot
out of Hardin's hand, the latter stepped back
toward the main line track and laughed;
that Hardin stopped near the main line track,
stood still and looked at him as he passed on

---

west on engine No. 94; that he (witness) then placed a coal pick he had in his hand in the place where it belonged on the engine and looked back at Hardin over the edge of the tank, saw that he was in danger of being struck by the coal car being pushed by engine No. 90 approaching from the east, and hallooed to him, "Look out, look out, Pat!" that at this time the coal car was 15 or 20 feet east of Hardin; that after he hallooed at Hardin as stated, Fant, the engineer on No. 94, also hallooed at him, and about the same time he (witness) hallooed at him again; and that Hardin then stepped with his right foot over the south rail of the main line track and was struck by the coal car. The witness Souter was about 100 yards (east, it seems) from the place where the accident occurred. His attention was attracted to Hardin by the backing of the latter towards the main line track as the coal car and engine No. 90 approached him, because he thought if he kept on backing as he was he would be in danger from same; he did not know how many steps backwards Hardin took before he was struck by the coal car, but stated that as the distance between the lead and main line tracks was only 6 or 8 feet "he didn't have to back very far." He was asked by counsel: "Well, did he go as much as that?" and answered, "He backed clear up on that other track in my sight." The witness was unable to say whether Hardin as he backed stopped and stood still at any time or not. Bruce, the switchman who was sitting on the left-hand side of the front end of the coal car as it approached Hardin, testified that as the car he was on approached Hardin, he saw him catch Coston by the foot as the latter stood on the gangway of No. 94; that Hardin was then facing west with his back towards witness; that the car he (witness) was sitting on and engine No. 90 were moving towards Hardin not faster than at the rate of from four to six miles an hour—about as fast, he said, as a man could walk; that he heard Fant halloo at Hardin to "look out," when the latter jumped or stepped right in front of the car which ran over him; and that he (witness) did not halloo at Hardin, because he did not have time and was frightened.

From the testimony referred to showing that Hardin was discovered by Coston, Fant and Souter to be in a position of peril because of the coal car and engine No. 90, we think the jury might have found that Bruce, in the discharge of his duty to keep a lookout for persons in such a situation, discovered Hardin to be in a perilous position; and from the testimony, if they believed it, showing the coal car and engine No. 90 to have been moving at the rate of only four or five miles an hour, to have been 15 or 20 feet from Hardin when Coston discovered

that his (Hardin's) position was a perilous one; and from the testimony showing that after his situation was discovered by them, both Coston and then Fant had time to halloo at him and that he had time to take the step that made his position more perilous, before the car got to the point on the track where it struck him, the jury might have found that Bruce, after discovering Hardin to be in danger, had time in which, by the use of means available to him, he could have prevented the occurrence of the accident. It appeared that Hardin had time, after the warning given him by Coston and Fant, to step further into danger before the coal car reached him. His stepping in that direction probably was due to the fact that, not realizing from whence he was to expect the danger against which he was warned, he instinctively moved from the direction from whence the warning came. Had Bruce been as prompt to warn him in the same way, the jury might have believed that he, instinctively, would have stepped out of the way of the approaching car.

There is testimony in the record in conflict with that we have referred to, but it was for the jury to say whether greater weight should be given to that referred to than to the conflicting testimony, or not.

The judgment is reversed, and the cause is remanded for a new trial.